**UNITED STATES of America, Plaintiff,**

v.

**James Elliot TYLER and Michael Lynn Yepez, Defendants.**

**No. 1:90–CR–48.**

United States District Court, W.D. Michigan.

Sept. 19, 1990.

John A. Smietanka, Donald A. Davis, Grand Rapids, Mich., for the U.S.

Michael A. McInerney, Grand Rapids, Mich., for Michael Lynn Yepez.

Daniel Fagan, Grand Rapids, Mich., for James Elliot Tyler.

AMENDED OPINION [1]

ENSLEN, District Judge.

This matter is before the Court on defendant Tyler's motion in limine to preclude admission at trial of correspondence between defendant Tyler and "attorney" Melvin Deutsch. Defendant Tyler requests an order precluding the government from introducing at trial, either directly or indirectly, correspondence between himself and Melvin Deutsch, or evidence of the contents of the correspondence. Defendant Tyler asserts that the correspondence is inadmissible at trial because it is protected by attorney-client privilege. At a hearing in this matter on July 23, 1990, defendant Tyler testified that he met Melvin P. Deutsch while they were in federal prison in Oxford, Wisconsin. Mr. Tyler testified that he believed that Mr. Deutsch was an attorney, that Mr. Deutsch had diplomas, including a law school diploma, on the wall of his cell and that Mr. Tyler, along with other inmates, addressed Mr. Deutsch as "counselor." Mr. Tyler testified that he shared a cell with Mr. Deutsch for a period of time, and that he gave Mr. Deutsch $50.00 to represent him on a legal matter involving the parole board. Mr. Tyler testified that this parole matter was connected to the instant case, but he was unable to explain how it was related.

Affidavits have now been submitted from counsel for the government and defendant indicating that Melvin P. Deutsch is not currently a member of the bar in California, Illinois, or New York (government's affidavit at 2–3). Further, the affidavit of defendant's counsel states that he contacted a Mrs. Loray Olan, of the Attorney Registration Office of New York, and she indicated that as far back as 1926, there has not been a Melvin P. Deutsch registered or admitted to practice law in the State of New York. Defendant's counsel also contacted Linda Kim of the Membership Records Department of the California Bar Examiners, who indicated that Melvin P. Deutsch was not now nor in the past licensed to practice law in the state of California. Defendant's counsel also states that he spoke with Tom Hocking of the Law Society of Upper Canada, Ontario, who also indicated that as of July 26, 1990, Melvin P. Deutsch had never been registered to practice law in the Province of Ontario. This last information is particularly interesting in light of the affidavit of government's counsel which states that Melvin P. Deutsch stated, in a conversation with government counsel, that he graduated from the York School of Law in Toronto, Canada in 1956 and that he practiced law in Canada until 1987 when he was convicted of wire fraud. However, the Court contacted York School of Law and learned that it did not exist in 1956.

DISCUSSION

The issue in this matter concerns the common law rule that an attorney cannot disclose confidences entrusted by a client without the client's permission. The attorney-client privilege has long been one of the testimonial privileges recognized by common law. *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955 (3rd Cir. 1984). The privilege arises whenever legal service, assistance, advice or opinion is sought from an attorney in his or her capacity as an attorney, and under circumstances that support a finding of an attorney-client relationship. *United States v. Demuaro*, 581 F.2d 50 (2d Cir.1978), *citing United States v. Kovel*, 296 F.2d 918 (2d Cir.1961). There are many cases, including those cited by defendant in support of his

1. An earlier, substantially similar, version of this opinion was issued by the Court on August 2, 1990.

motion,[2] which discuss when an attorney client relationship arises between a client and someone who is licensed to practice law; surprisingly, however, there is scant case law on the question of whether an attorney-client privilege applies when the defendant erroneously believes that he or she is consulting with an attorney, but the person who is being consulted is not licensed to practice law.

The only case which this Court has discovered which directly addresses the issue at hand is *United States v. Boffa,* 513 F.Supp. 517 (D.Del.1981).[3] In *Boffa,* defendants filed a motion to suppress evidence claimed to have been received by the prosecution from a man named Morgan who the defendants claimed had fraudulently represented himself as an attorney. The court noted:

> [T]he rationale behind the privilege equally supports the theory that the privilege should be extended to those who make confidential communications to an individual in the genuine, but mistaken, belief that he is an attorney. (cites omitted). Prudence dictates that such a belief should be reasonable in order to lay claim to the protection of the privilege and that a 'respectable degree of precaution' in engaging the services of the 'attorney' must be demonstrated. (cite omitted). Where such a belief is proved, however, the client should not be compelled to bear the risk of his 'attorney's' deception and he should be entitled to the benefits of the privilege as long as his bona fide belief in his counsel's status is maintained.

*Boffa,* 513 F.Supp. at 523. The court went on to outline the following criteria which the defendants were required to prove in order to qualify for the relief sought.

**2.** See e.g., *Kearns v. Fred Lavery Porsche Audi Company,* 745 F.2d 600 (Fed.Cir.1984) and *Westinghouse Electric Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.1978).

**3.** In *Dabney v. Investment Corp. of America,* 82 F.R.D. 464 (E.D.Pa.1979), the court noted that an exception exists to the general requirement that an attorney-confidant be a member of the

(1) [T]hat Morgan fraudulently held himself out to the defendant as an attorney; (2) that the defendant genuinely and reasonably believed that Morgan was an attorney; (3) that pursuant to this belief, the defendant made confidential communications to Morgan ...; (4) that Morgan disclosed to the government the confidential communications he received from the defendants; and (5) that the government used these disclosures as a source for obtaining other evidence that it intends to use at the trial....

*Boffa,* 513 F.Supp. at 523. In *Boffa* the court found that these criteria had not been met, and thus denied defendants' motion to suppress.

■■ In the case at hand, the government urges this Court to find that the above criteria have not been met, asserting that Mr. Deutsch denies that he "held himself out to be the defendant's attorney" and that "it stretches imaginations to the limits to accept Mr. Tyler's claim that he is so ingenuous as to believe that a person convicted of a felony will be in a position to legally represent him upon his release from the prison cell they shared." Brief at 4. I disagree. First, it is not necessary that Mr. Deutsch "held himself out to be the defendant's attorney," rather, all that is called for is that Mr. Deutsch held himself out as an attorney, and that Mr. Tyler reasonably believed this representation. I believe this standard has been met. Mr. Deutsch admits that he posted a legal diploma on his cell wall, Affidavit of David Scheiber, Government Counsel, at 1, and Mr. Tyler testified that Mr. Deutsch assisted prisoners on all types of legal matters and that he was addressed as "counselor" by fellow prisoners. The government has introduced no evidence to refute this testimony. Mr. Tyler's belief that Mr. Deutsch was an attorney was reasonable under the

bar in cases where the client is genuinely mistaken as to the attorney's credentials, citing to 8 Wigmore, Evidence § 2302. However, the court found that the exception was inapplicable to the facts before it, as it was known by all that the person in question was a law student and had not, at the time in question, been admitted to the bar.

426

circumstances. Further, this court does not find the fact that Mr. Tyler did not know that a person convicted of a felony would not usually be allowed to practice law to be "ingenuous." To expect a layperson to be familiar with the internal discipline procedures of the Bar is unreasonable.

I am convinced that the criteria outlined in *Boffa* impose a reasonable standard upon which to decide this question. Further, I am persuaded that defendant has met those criteria. Mr. Deutsch held himself out as an attorney to Mr. Tyler and others, and Mr. Tyler genuinely and reasonably believed that Mr. Deutsch was an attorney. Pursuant to his belief, Mr. Deutsch made confidential communications to Mr. Tyler seeking legal advice and opinions.[4] Further, both the government and defendant Tyler admit that Mr. Deutsch provided copies of these letters to the government and the government plans to use these letters as evidence during the upcoming trial. The attorney-client privilege should be applied to the correspondence in question. Accordingly, I will enter an order granting defendant's motion to suppress and prohibiting the government from introducing evidence either directly or indirectly of the communications between Defendant Tyler and Melvin P. Deutsch.

Defendant Yepez has filed a motion for severance under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and the government has also filed a motion under *Bruton.* Because both of those motions turn on evidence contained in the letters discussed above, they need no longer be considered and are dismissed as moot.

---

**4.** The government notes correctly that Mr. Tyler has been represented by Attorney Daniel Fagan throughout this entire matter, and suggests that this fact means that Mr. Tyler could not have been seeking legal advice from Mr. Deutsch. When questioned on this fact during his testimony Mr. Tyler explained that he was attempting to garner a "second opinion" from Mr. Deutsch, an explanation which this Court finds to be reasonable and believable. The fact that at one time Mr. Tyler was unsure of Attorney Fagan is further evidenced by a letter from Mr. Tyler to this Court dated July 1, 1990, in which Mr. Tyler indicated a "major breakdown in this attorney-client relationship" and requested that this Court appoint different counsel to represent him. Letter of July 1, 1990. This matter was settled before trial with Mr. Tyler withdrawing his request and agreeing to be represented by Mr. Fagan.