### UNITED STATES of America

v.

### Edwin H. RIVERA, Shoba Bukala, Philips Issac Alenchery, Kataryna Klimaszewska, Manisha Handa, Lottie Pagan, Betsy Olivera, Hilda Diaz, Defendants.

### No. 93 Cr. 568 (CSH).

United States District Court, S.D. New York.

Nov. 15, 1993.

Ramon Pagon, Bronx, NY, for Rivera.

Isabelle A. Kirshner, Epstein & Kirshner, New York City, for Nukala.

Carey A. Bricker, The Legal Aid Society, FDSU, New York City, for Alenchery.

Franklin B. Mandel, New York City, for Klimaszewska.

Robert Weinstein, New York City, for Handa.

Philip Foglia, Culleton, Marinaccio & Foglia, White Plains, NY, for Pagan.

Neil B. Checkman, New York City, for Olivera.

Manuel A. Sanchez, Jr., Bronx, NY, for Diaz Rivera.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge.

This case is before the Court on the government's motion to unseal certain documents obtained from the law offices of defendant Edwin Rivera. For the reasons set forth below, the government's motion is granted.

### BACKGROUND

On July 6, 1993, a grand jury in the Southern District of New York returned a 103 count indictment charging defendant Edwin Rivera and seven others with conspiring to violate federal immigration laws. The indictment alleges that Rivera had falsely held himself out to be an attorney, and had filed fraudulent amnesty applications with the Immigration and Naturalization Service ("INS") on behalf of over one hundred clients. Additionally, the indictment alleges that Rivera and his staff (his co-defendants) knowingly prepared fraudulent amnesty applications and advised the clients how to deceive INS examiners during their interviews.

In June of 1993, Magistrate Judges Roberts and Gershon issued several search warrants authorizing the government to seize client files and other materials from the law offices of Edwin Rivera and from his home. The warrants specifically provided that all client files and other documents or materials that appeared to contain attorney-client communications be sealed and held at the United States Attorney's Office until any questions of privilege were resolved. Pursuant to these warrants, the government seized approximately 90 client files, three computers, a number of computer disks, and other materials.

In addition, a federal grand jury subpoenaed all immigration-related client files remaining in the office. Pursuant to that subpoena, five other boxes of client files were delivered to the INS. Those files were sealed and have been stored unopened at the INS offices in New York.

The defendants were indicted on July 6, 1993. Following the initial status conference, the government moved to have the files unsealed on the ground that they are not protected by the attorney-client privilege.

Recognizing that resolution of these issues would require a careful review of all of the documents in the hundreds of client files in the government's possession, the Court appointed a special master to review the files and advise the Court of any viable claims of attorney-client privilege that could be advanced. By order dated August 8, 1993, the Court appointed Maurice Sercarz, Esq. to act as special master in this case.

A scheduling order was entered, directing the special master to complete his review and report to the Court by October 22, 1993. The government and parties were invited to respond to the special master's reports, although only the government availed itself of that opportunity. The matter is now before the Court for resolution of the government's motion.

### DISCUSSION

 The party invoking the attorney-client privilege has the burden of showing each and every element of the privilege, *see United States v. Schwinner*, 892 F.2d 237, 243 (2d Cir.1989), including that (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a lawyer of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;[1] (3) the communication

---

**1.** It is common ground among the parties that the attorney-client privilege attaches to confidential communications made to an individual in the genuine, but mistaken, belief that he is an attor-

568

relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers, (c) for the purposes of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *See Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)).

The government initially sought an order unsealing all of the seized and subpoenaed files. Counsel for the government later amended its request to ask that the Court unseal the client files of only those individuals who filed an application for amnesty with the INS[2]. *See* Transcript, November 1, 1993, at 21.

■■■ Two types of information are potentially contained in the client files. One is the substantive communications between the client and the firm. Additionally, releasing the client files to the government would reveal the identities of the clients who sought counsel at the Rivera firm. It is generally accepted that the attorney-client privilege extends only to the substance of matters communicated to an attorney in professional confidence. The identity of a client, by contrast, is generally not protected by the privilege. *See Colton*, at 637. However, there are circumstances where courts have declined to order disclosure of a client's identity, generally where identification of the client could provide the "last link" incriminating the client. *See id.*, at 637; *Baird v. Koerner*, 279 F.2d 623, 630–32 (9th Cir.1960); *In re Grand Jury Proceedings v. Jones*, 517 F.2d 666, 671 (5th Cir.1975). This may occur where the

ney. *See United States v. Boffa*, 513 F.Supp. 523 (D.Del.1981), modified on other grounds, 68 F.2d 919 (3d Cir.1982); 8 Wigmore, *Evidence* § 2302 (McNaughton Rev.1961); *Dabney v. Investment Corp. of America*, 82 F.R.D. 464, 465 (E.D.Pa. 1989). *See also United States v. Tyler*, 745 F.Supp. 423, 425–26 (W.D.Mich.1990). Accordingly, it is irrelevant for the purposes of this motion that Rivera was not an attorney, since the parties agree that his clients were operating under the mistaken belief that he was.

substance of the communication is known, but not its source.

The special master concluded that this could be one of those cases where the client's identity was protected by the attorney-client privilege. *See* Sercarz letters of September 27, 1993 at 7; and October 20, 1993 at 3. By modifying its request, to unseal only the files of individuals whom the government knows filed an application for amnesty, the government obviates any concerns about revealing the identities of Rivera's clients. Accordingly, the court need only concern itself with the issues arising out of the substantive contents of the files.

The government raises two arguments in support of its motion to unseal the files. First, it contends that the client files fall into the crime-fraud exception to the attorney-client privilege. Second, the government asserts that the information contained in the files was intended to be disclosed to the INS, and therefore is not protected by the attorney-client privilege.

### A. The Crime Fraud Exception

■ It is well established that "communications that otherwise would be protected by the attorney-client privilege ... are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir.1984).

■ Although the party invoking the privilege normally has the burden of proving each element of that privilege, the courts have held that the party invoking the crime-fraud exception has the burden of showing "probable cause to believe that the communications of counsel were intended in some way to

2. In a letter to the Court dated October 25, 1993, the government submitted two lists of names. The first is a list submitted to the INS by defendant Rivera in December 1992 which he claims includes the names of all clients on whose behalf he submitted an application for amnesty. The second list was compiled by the INS, and includes the names of Rivera's clients whom the INS has independently determined filed applications for amnesty. The government has indicated that it seeks disclosure of the client files of individuals named on either of these two lists.

facilitate or to conceal the criminal activity." *In re Grand Jury Subpoenas Duces Tecum,* 798 F.2d 32, 34 (2d Cir.1986). In this case, the government would have to show that there was probable cause to believe that in each instance (1) the communications were elicited as part of an ongoing scheme to commit a fraud, and (2) the client was aware at the time of the communication that he was participating in a fraud. *See In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1038.

■ The government contends that the INS has identified at least 128 legalization applications filed by the Rivera law firm which contained false statements and were supported by fraudulent documentation. Specifically, the applications contained (1) fake invoices or receipts which had been artificially aged; (2) witness affidavits containing false statements; and (3) purported flight confirmation by Air India which the airline has stated was not valid. *See* Government's Mem. Of Law, at 7. The large number of purportedly fraudulent applications supports the government's argument that the fraud at Rivera firm was widespread.

According to the special master, none of the information in the client files supports or disproves the government's claims regarding false statements or fraudulent documents. However, in virtually every file, the special master found documents containing the signature portions of the I–687 form (an INS application for amnesty) and the IRS 1040 form. Presumably, by signing these forms, the clients would be providing a mechanism whereby a false I–687 of 1040 form could be prepared by agents of the Rivera firm. *See* Sercarz letter of September 27, 1993 at 6–7.

Additionally, other items seized from the Rivera offices support the government's argument that the defendants and their clients were engaged in large scale fraud. Among the items seized were blank boarding passes, blank stationery from airlines and blank stationery from various Consulates General, presumably used to create false evidence of foreign travel; blank pay receipts from various businesses, presumably used to create false evidence of employment; and notes which appear to reflect a training session at

which clients of the Rivera firm were drilled in the appropriate method for answering questions at INS interviews. *See* Sercarz letter of October 20, 1993, at 1–2.

The Court is satisfied that there is probable cause to believe that the Rivera firm was engaged in wholesale immigration fraud. The government's allegations of fraudulent applications is supported by the materials seized from the law offices. Moreover, the nature of the fraud alleged makes it likely that the clients were aware that they were participating in a fraudulent scheme. Presumably, a client would be aware of whether information contained in a signed application is true.

Accordingly, I conclude that the client files sought by the government are not protected by the attorney-client privilege and should be unsealed.

### B. *The Disclosure Argument*

■ Only confidential communications are protected by the attorney-client privilege. *See In re Horowitz,* 482 F.2d 72, 81–82 (2d Cir.1973); *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1037. Accordingly, any information given to an attorney with the expectation that it would be turned over to a third party would not be protected by the privilege. For example, the Second Circuit has held that a tax attorney could not assert a blanket claim of privilege for documents relating to the representation of a client because

> a good deal of information transmitted to an attorney by a client is not intended to be confidential, but rather is given for transmittal by the attorney to others—for example, for inclusion in the tax return. Such information is, of course, not privileged. *Colton,* 306 F.2d at 638.

The government argues that here, the information contained in the client files was not intended to be confidential, because the clients expected that it would be conveyed to the INS in connection with an application for amnesty.

The special master reports that the client files contain four types of documents: (1) completed INS forms; (2) forms prepared in

house by the Rivera law firm[3]; (3) materials designed to corroborate the information contained in the INS forms; and (4) notes apparently prepared by agents of the Rivera firm[4]. I am satisfied that the information contained in the client files was provided by the client with the intention that it be revealed to the INS in connection with an application for amnesty. That intention is evidenced by the fact that each of these individuals actually filed an amnesty application. Accordingly, it was not communicated with the intention that it remain confidential, but with an eye towards disclosure to a third party. As such, it is not protected by the attorney-client privilege. This analysis furnishes an alternative basis for disclosure.

### ORDER

I conclude that the client files of individuals who have filed an application for amnesty with the INS are not protected by the attorney-client privilege, and should be unsealed. An Assistant United States Attorney unrelated to this case is directed to go through the seized and subpoenaed files, and pull the files of those individuals whose names are included on either of the two lists submitted to the Court by the government with its letter of October 25, 1993. Those files may be turned over the government attorneys involved in this case. The other files are to remain sealed.

It is SO ORDERED.

---

**3.** These forms appear designed to elicit information for inclusion in the amnesty application.

**4.** The special master reports: "None of the files contain extensive notes reflecting the content of client interviews. Where notes exist apart from the forms described above, they most often take the form of indications on a blank sheet of paper that certain items are missing from the clients' files." Sercarz letter of September 27, 1993, at 4.