**Lillian BARRETT, individually and in her capacity as Administrator of the Estate of Judith Barrett, deceased; and Jacqueline Barrett Toole, a minor by Jeffrey C. Toole, her Guardian, Plaintiffs,**

v.

**John J. VOJTAS, individually and in his official capacity as Police Officer of the Borough of Brentwood; the Borough of Brentwood, Defendants.**

Civ.A. No. 97–1296.

United States District Court,
W.D. Pennsylvania,
Pittsburgh Division.

Sept. 30, 1998.

Mark A. Rush, Jerry S. McDevitt, Kirkpatrick & Lockhart, Pittsburgh, PA, for Plaintiffs.

Suzanne B. Merrick, Romel L. Nicholas, Gaitens Tucceri & Nicholas, Pittsburgh, PA, for Defendants.

### *MEMORANDUM OPINION*

CINDRICH, District Judge.

This case arises from the death of Judith Barrett. The instant suit was brought by Judith Barrett's mother, Lillian Barrett, individually and in her capacity as administrator of Judith Barrett's estate and by Judith Barrett's daughter, Jacqueline Barrett Toole, through her guardian Jeffrey C. Toole (collectively referred to as the "Plaintiffs"). The Plaintiffs' second amended complaint asserts a federal civil rights claim against defendants

John J. Vojtas ("Vojtas") and the Borough of Brentwood ("Brentwood"), pursuant to 42 U.S.C. Section 1983. The second amended complaint also asserts the state law claims of wrongful death, assault, battery, and intentional infliction of emotional distress against defendant Vojtas. Vojtas filed two motions for protective order (Doc. Nos. 32 and 47) relating to various psychotherapist records, both of which are currently pending.

## I. *Background*

At all times relevant to the instant suit, Vojtas was employed by Brentwood as a police officer. Sometime in 1992, Vojtas and the Decedent, Judith Barrett, entered into a personal relationship. The Plaintiffs allege that shortly thereafter, Vojtas embarked upon a cycle of physical and emotional abuse directed toward the Decedent up to and including the morning of her death. The Plaintiffs contend that Vojtas used his police authority to inflict much of the abuse, and that Brentwood knew of Vojtas's repeated abuses but took no action. On the morning of June 27, 1993, the Decedent was found with a gunshot wound to the head. The bullet which killed the Decedent came from Vojtas's police service weapon.

After the Decedent's death, Vojtas was seen by psychiatrist Steven L. Guinn, M.D.; psychiatrist Robert Wettstein, M.D.; and psychologist Allen D. Pass, Ph.D. Vojtas was ordered by Brentwood to attend counseling sessions with Dr. Guinn in 1993. Dr. Guinn was expected to, and did, provide various status reports and recommendations to Brentwood based on such sessions. In 1995, Vojtas was ordered by Brentwood to attend counseling sessions with Dr. Pass, following the death of an arrestee in Vojtas's custody. Dr. Pass, like Dr. Guinn, was expected to, and did, provide various status reports and recommendations to Brentwood based on the counseling sessions.

Vojtas was ordered to undergo a psychiatric evaluation by Dr. Wettstein in 1994, the results of which were reported to Brentwood. Dr. Wettstein also referred Vojtas to L.V. Pacoe, Ph.D., for certain psychological tests. Vojtas states that he was informed that any communications with Dr. Wettstein would not be confidential. Thus, he is not moving to prohibit the production of Dr. Wettstein's records, but instead requests that the records be subjected to a protective order limiting their dissemination. Likewise, Vojtas agrees that Dr. Pacoe's test results should be produced with Dr. Wettstein's file, but requests that the results be subject to a protective order.

Vojtas contends that unlike Dr. Wettstein, however, Dr. Guinn and Dr. Pass provided treatment. Although they were to provide status reports and recommendations to Brentwood, Vojtas maintains that it was his understanding, as well as that of Dr. Guinn and Dr. Pass, that conversations taking place in the sessions would be confidential.

Accordingly, Vojtas objects to the production of all records in the possession of Dr. Guinn [1] and Dr. Pass, other than any correspondence sent by them to a third party. Vojtas argues that such documents are protected by the psychotherapist-patient privilege recognized by the United States Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

The Plaintiffs respond that neither Dr. Guinn's nor Dr. Pass's records are privileged. They contend that the sessions with Dr. Guinn and Dr. Pass were not confidential as Vojtas was ordered by his superiors to meet with both doctors, and both submitted status reports and recommendations to Brentwood officials.

## II. *Analysis*

The Supreme Court held in *Jaffee* that confidential communications between a licensed psychotherapist and his or her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence. 518 U.S. 1, 116 S.Ct. at 1931. The privilege protects conversations and the notes taken during confidential counseling

---

**1.** Vojtas states that the Plaintiffs have also subpoenaed records in the possession of P.S.P. Human Resource Development, Dr. Guinn's records custodian and employer. Vojtas also objects to the production of these records.

sessions. *Id.*, 518 U.S. 1, 116 S.Ct. at 1932. The Court did not attempt to delineate the full contours of the privilege in a way that would govern all conceivable future cases, recognizing, as is the case with other testimonial privileges, that a patient may waive the protection. *Id.*, 518 U.S. 1, 116 S.Ct. at 1931–32. The Court noted instead that the details of the privilege must be developed on a case-by-case basis. *Id.*, 518 U.S. 1, 116 S.Ct. at 1932.

The Court identified significant private and public interests that support the creation of the privilege. The significant private interest identified was the fostering of effective psychiatric treatment. Quoting from the Judicial Conference Advisory Committee notes, the Court stated that a psychiatrist's ability to help her patients "is completely dependent upon [the patients'] willingness and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure ... patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule ..., there is wide agreement that confidentiality is a sine qua non for successful psychiatric treatment."

*Id.*, 518 U.S. 1, 116 S.Ct. at 1928 (quoting Advisory Committee's Notes to Proposed Rules, 56 F.R.D. 183, 242 (1972)).

Similarly, the Court noted that the privilege serves the important public interest of facilitating good public mental health. The Court offered a specific public interest with regard to police officers. The Court stated:

This case amply demonstrates the importance of allowing individuals to receive confidential counseling. Police officers engaged in the dangerous and difficult tasks associated with protecting the safety of our communities not only confront the risk of physical harm but also face stressful circumstances that may give rise to anxiety, depression, fear, or anger. The entire community may suffer if police officers are not able to receive effective counseling and treatment after traumatic incidents, either

because trained officers leave the profession prematurely or because those in need of treatment remain on the job.

*Jaffee*, 518 U.S. 1, 116 S.Ct. at 1929 n. 10.

■ The Court's reasoning clearly shows that confidentiality is the foundation upon which the psychotherapist-patient privilege rests. Indeed, a crucial element of any testimonial privilege is an intent to keep a communication confidential. *See U.S. v. Rockwell Intern.*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("Another consideration crucial to determining the applicability of the [attorney-client] privilege is confidentiality.").

■ There are some important differences in the underlying facts of the instant suit and those of the *Jaffee* case. It appears that the defendant police officer in *Jaffee* voluntarily sought counseling and that no reports were submitted by the counselor to a third party.[2] Moreover, there is no indication that the counselor engaged in any correspondence with third parties regarding the counseling sessions. In the present case, however, there is no dispute that Vojtas was ordered by Brentwood officials to be examined by Dr. Guinn and Dr. Pass, and that both doctors subsequently submitted certain reports to Brentwood officials.

■ Although we have found no cases on point in which the *Jaffee* privilege has been asserted, communications that are intended to be disclosed to third parties are generally not protected by a testimonial privilege. There would be no reasonable expectation of confidentiality, and therefore no confidential intent, if a party to a conversation was aware that the other party may report on the conversation to a third party. *See Rockwell Intern.*, 897 F.2d at 1265 ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed.").

There are few federal cases in which *Jaffee* has been applied. Thus, there has been little to no analysis of the federal psychotherapist-

---

**2.** The Court quotes the lower court as stating that the defendant police officer "and all those placed in her most unfortunate circumstances, are entitled to be protected *in their desire to seek*

*counseling* after mortally wounding another human being in the line of duty." *Jaffee*, 518 U.S. 1, 116 S.Ct. at 1927 n. 5 (emphasis added).

patient privilege. Pennsylvania, on the other hand, has recognized a psychotherapist-patient privilege for several years and developed a long line of case law addressing its application. Although the scope of the federal psychotherapist-patient privilege is strictly a matter of federal law and interpretation, we find that reference to Pennsylvania jurisprudence on its similar privilege, though not authoritative, is instructive.[3]

Pennsylvania's privilege is set forth at 42 Pa.Cons.Stat.Ann. Section 5944, which states in relevant part as follows:

**Confidential communications to psychiatrists or licensed psychologists**

No psychiatrist or person who has been licensed ... to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

The statute establishes the strength of Pennsylvania's privilege equating it with the attorney-client privilege. The Pennsylvania courts have recognized, however, that there must be an expectation of confidentiality to assert the privilege.

In *Matter of Adoption of Embick*, 351 Pa.Super. 491, 506 A.2d 455 (1986), a case circumstantially similar to the instant suit, the Pennsylvania Superior Court held that the psychotherapist-patient privilege did not apply. A child and her parents were examined by a licensed psychologist at the request of a county child and youth agency. Although the parents had agreed to the examinations, they sought to preclude the psychologist from testifying in an action to terminate parental rights asserting Pennsylvania's psychotherapist-patient privilege. The Court held that communications with the psychologist were not privileged, stating that

> [t]here can be no doubt that the purpose of the psychologist-client privilege is to encourage people to seek professional help for their mental or emotional problems, and that purpose is best accomplished when people in need of psychotherapeutic treatment know that what they tell their therapist during treatment will not be disclosed to anyone. In a concurring and dissenting opinion in *Commonwealth ex rel. Platt v. Platt*, [266 Pa.Super. 276, 404 A.2d 410 (1979)] *supra*, former President Judge Spaeth wrote that, "General agreement exists in the legal and medical worlds that confidentiality of communications between patients and therapists is the *sine qua non* of successful psychiatric treatment."

It cannot be gainsaid that society desires to protect and provide succor for the relationship of psychologist and client, and that without the confidentiality which the privilege provides, many people would simply forego therapeutic treatment.

With that rationale as the underpinning in support of non-disclosure of confidential communications between client and psychologist, should the privilege be applicable where appellants, as in the case at bar, agreed to be examined by Dr. Piper at the request of the Agency? For several reasons, we think not.

First, there has been no showing that appellants were Dr. Piper's clients in any

---

3. We note that in *Jaffee* the Supreme Court considered the individual states' recognition of a psychotherapist-patient privilege in its analysis. The Court stated the following:

We have previously observed that the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one. Because state legislatures are fully aware of the need to protect the integrity of the factfinding functions of their courts, the existence of a consensus among the States indicates that "reason and experience" support the recognition of the privilege. In addition, given the importance of the patient's understanding that her communications with her therapists will not be publicly disclosed, any ·State's promise of confidentiality would have little value if the patient were aware that the privilege would not be honored in federal court. Denial of the federal privilege therefore would frustrate the purposes of the state legislation that was enacted to foster these confidential communications.

*Jaffee*, 518 U.S. 1, 116 S.Ct. at 1929–30.

sense of that term. They were not seeking treatment, or counseling, or advice for any mental or emotional problems; in fact, as we read this record, we doubt that either appellant would ever even remotely suggest that any mental or emotional problems might exist. They went to see Dr. Piper because they were asked to do so by the Agency, and for the limited purpose of examination. We therefore hold that under the facts of this case, the relationship between appellants and Dr. Piper was not the type of relationship contemplated by the statute which confers the privilege.

Second, we are satisfied from our own reading of the record that appellants knew Dr. Piper would, at the very least, report back to the Agency if not directly to the court, the results of her examination; therefore, appellants had no expectations that their communications with Dr. Piper would be held confidential.

*Matter of Adoption of Embick,* 506 A.2d at 460 (citations omitted).

There are important similarities between Pennsylvania's psychotherapist-patient privilege and its federal counterpart. First, Pennsylvania's privilege is a forceful one, being equated with the attorney-client privilege in the statute. In *Jaffee,* the Supreme Court also recognized a forceful privilege, rejecting any balancing component to its assertion. Also, the Pennsylvania courts, like the Supreme Court, acknowledge that the essential purpose of a psychotherapist-patient privilege is to encourage people to obtain effective psychotherapy. Moreover, both the Pennsylvania courts and the Supreme Court recognize that confidentiality is the sine qua non of effective counseling.

We find the *Embick* opinion to be a well-reasoned one. Like the Superior Court, we find that the psychotherapist-patient relationship which existed in the instant case was not the type of relationship contemplated when the privilege was recognized by the Supreme Court. Vojtas did not seek treatment, but was ordered to see Dr. Guinn and Dr. Pass. More importantly, Vojtas had no expectation of confidentiality in this treatment, as it was known that Dr. Guinn and Dr. Pass would report back to Brentwood on the results of their examinations. Thus, the conversations and the notes taken during counseling sessions with Dr. Guinn and Dr. Pass are not protected by the psychotherapist-patient privilege.

We note that our ruling offends neither the private nor the public interest identified in *Jaffee* of fostering effective counseling. Confidentiality is the foundation for effective counseling, as pointed out by the Supreme Court. *Jaffee,* 518 U.S. 1, 116 S.Ct. at 1928. Once the expectation of confidentiality is gone, however, the subsequent assertion of a testimonial privilege is no cure for effectiveness. This logic applies with equal weight in the context of police officer counseling. A police officer who is ordered to therapy, knowing that the therapist will report back to his or her superior, would have no expectation that his or her conversation was confidential.

We note that there could be situations giving rise to the privilege when an officer has been ordered to undergo therapy. Certainly, some officers who would otherwise benefit from counseling after a traumatic event, may be reluctant to seek it in the absence of an order to do so. However, when it is expected that the therapist will produce a report or an evaluation from the ordered sessions for review by third parties, who may be elected officials, there can be no expectation of confidentiality, and therefore no privilege.

Accordingly, the motions for a protective order will be denied. Dr. Guinn and Dr. Pass will be ordered to promptly respond to the Plaintiffs' subpoenas. The parties should follow the procedures set forth in the court's standing protective order for any document deemed to be confidential.

An order consistent with this memorandum opinion will be entered.

### *ORDER*

**AND NOW** this 30th day of September, 1998, for the reasons stated in the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that Vojtas's Motions for Protective Order Relating to Psychotherapy

Records (Doc. Nos. 32 and 47) are both **DENIED**.