Anne Marie SPEAKER, Nicole C. Speaker and Nicholas J. Speaker, By and Through their Guardian ad Litem Anne Marie Speaker, et al.

v.

COUNTY OF SAN BERNARDINO, et al.

No. ED CV 94–141–RT.

United States District Court, C.D. California, Eastern Division.

Feb. 2, 2000.

Gary S. Casselman, Law Offices of Gary S. Casselman, Los Angeles, CA, for plaintiffs Albert Speaker, Jacquelyn Speaker.

E. Thomas Barham, Jr., Law Offices of Barham & Ostrow, Los Almitos, CA, for plaintiffs Anne Marie Speaker, Nicole Speaker, Nicholas J. Speaker.

Carol Ann Rohr, S. Frank Harrell, Franscell, Strickland, Roberts & Lawrence, Santa Ana, CA, for defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MICHAEL Z. JOHNSON'S MOTION TO EXCLUDE AS EVIDENCE AT TRIAL COMMUNICATIONS BETWEEN DR. BONNIE MATHEWS AND HIM AS BEING PROTECTED BY THE PSYCHOTHERAPIST/PATIENT PRIVILEGE.

TIMLIN, District Judge.

The Court has read and considered Defendant Michael Z. Johnson ("Johnson")'s offer of proof re: application of psycho-

therapist/patient privilege,[1] Plaintiffs Anne Marie Speaker, Nicole C. Speaker and Nicholas J. Speaker, by and through their guardian ad litem Anne Marie Speaker, Anne Marie Speaker as special administrator of the Estate of John F. Speaker, Albert Speaker, and Jacqueline Speaker (collectively, "Plaintiffs")'s opposition, Johnson's reply, Plaintiffs' sur-opposition, and the supplemental briefing of both parties. Based on such consideration, the Court concludes as follows:

## I.

### BACKGROUND

This action arises from an incident on April 4, 1993 in which Johnson, a sergeant of the San Bernardino County Sheriff's Department ("Sheriff's Department"), shot and killed John Speaker ("Speaker") in front of his house. Shortly after the incident, Johnson attended two counseling sessions[2] with Dr. Bonnie Mathews ("Dr.Mathews"), a then licensed Marriage, Family, and Child Counselor ("MFCC").[3]

The County of San Bernardino had a policy which required any law enforcement officer who had been involved in a shooting to consult with a mental health counselor following the shooting incident. The sheriff's department would set up the counseling sessions in the sheriff's department offices. The officers were told that those meetings were confidential. Johnson's

first meeting, if not his second, with Dr. Mathews was held pursuant to this policy.

Plaintiffs seek to question Dr. Mathews at trial regarding what Johnson told her during those sessions. Johnson claims that those conversations are privileged pursuant to the psychotherapist/patient privilege and, therefore, inadmissible as evidence.

## II.

### ANALYSIS

#### A. The Contours of the Psychotherapist/Patient Privilege

In 1996, the Supreme Court announced the creation of a psychotherapist/patient privilege under federal common law. *See Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). In *Jaffee,* Mary Lu Redmond ("Redmond"), a police officer for the Village of Hoffman Estates, Illinois, shot and killed Ricky Allen ("Allen"), whom Redmond believed was about to stab someone. Allen's family filed an action against Redmond and the Village of Hoffman Estates, including a claim under 42 U.S.C. § 1983, and a wrongful death claim under Illinois law. *See id.* at 5, 116 S.Ct. at 1926.

The Village of Hoffman Estates employed a licensed clinical social worker, Karen Beyer, and after the shooting, Redmond participated in about 50 counseling

---

1. Although this motion is made on behalf of all defendants, the only defendant invoking the psychotherapist/patient privilege regarding communications with Dr. Bonnie Mathews is Johnson. Therefore, the Court will refer to Johnson as the movant.

2. The two sessions occurred on April 4, 1993 and April 7, 1993.

3. Cal.Bus. & Prof.Code § 4980.08(a), which became operative as of July 1, 1999, provides:

 The title "licensed marriage, family and child counselor" or "marriage, family and child counselor" is hereby renamed "licensed marriage and family therapist" or "marriage and family therapist," respectively. Any reference in any statute or reg-

ulation to a "licensed marriage, family and child counselor" or "marriage, family and child counselor" shall be deemed a reference to a "licensed marriage and family therapist" or "marriage and family therapist."

Because this provision was not operative during the relevant time period in 1993 when Dr. Mathews was licensed as an MFCC and counseled Johnson, this Court will use the term "MFCC" rather than "marriage and family therapist." Further, at the time of the subject counseling sessions Dr. Mathews had not received a psychology PhD and was not a doctor. However, in November 1993 she was awarded a psychology PhD. Accordingly, in this order she will be referred to as Dr. Mathews.

sessions with Beyer. *Id.* The plaintiffs brought a motion seeking access to Beyer's notes from those sessions for use in cross-examining Redmond at trial. The defendants opposed the motion, contending that the notes were privileged under a federal psychotherapist/patient privilege.

In holding that the notes were privileged under a psychotherapist/patient privilege, the Court stated: "Effective psychotherapy ... depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories and fears." *Id.* at 10, 116 S.Ct. at 1928. The Court further stressed that in the particular circumstances of the *Jaffee* case, "[t]he entire community may suffer if police officers are not able to receive effective counseling and treatment after traumatic incidents, either because trained officers leave the profession prematurely or because those in need of treatment remain on the job." *Id.* at 11, n. 10, 116 S.Ct. at 1929, n. 10.

The *Jaffee* Court also held that the federal psychotherapist/patient privilege extended to "confidential communications made to licensed social workers in the course of psychotherapy." *Id.* at 15, 116 S.Ct. at 1931. The Court noted that: "The reasons for recognizing a privilege for treatment by psychiatrists and psychologists apply with equal force to treatment by a clinical social worker.... Today, social workers provide a significant amount of mental health treatment." *Id.* at 15–16, 116 S.Ct. at 1931.

Further, the Supreme Court analogized the privilege to the attorney/client privilege and stated that, as such, it could be waived. *Id.* at 15, n. 14, 116 S.Ct. at 1931, n. 14. However, the Court expressly refused to elaborate on the contours of the privilege and when and how it could be waived. *Id.* at 18, 116 S.Ct. at 1932.

## B. General Application of the Psychotherapist/Patient Privilege

Johnson contends, for a number of reasons discussed below, that the psychotherapist/patient privilege applies to the communications between him and Dr. Mathews during their two meetings on April 4 and 7, 1993. Plaintiffs argue that the privilege does not apply.

### 1. Burden of Proof

■ The parties dispute which side has the burden of proof to establish that the privilege applies. In *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995), the Ninth Circuit stated that the burden of proof, in the context of the attorney/client privilege, is on the party seeking to establish that the privilege applies. *See also Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). Because the *Jaffee* Court, in announcing the creation of a psychotherapist/patient privilege, relied on a detailed analysis of and analogy to the attorney/client privilege, *see id.* at 10–11, 116 S.Ct. at 1928–29,[4] this Court is persuaded that the burden of proof for the psychotherapist/patient privilege is on the party seeking to establish that the privilege applies. Thus, because Johnson is invoking the privilege, he bears the burden of showing that the privilege applies to his consultations with Dr. Mathews.

### 2. State v. Federal Law

■ In their moving papers, the parties rely on the California law of privilege. This reliance is misplaced to the extent the parties argue that this Court must follow the state law of privilege. In *Folb v. Motion Picture Industry Pension & Health Plans, et al.*, 16 F.Supp.2d 1164 (C.D.Cal.1998), the court decided that in federal question cases, federal privilege law governs, even as to supplemental state

---

4. In *Jaffee*, the Court made several analogies to the attorney/client privilege. By way of example, the Court stated: "Like the spousal and attorney/client privileges, the psychother-apist/patient privilege is 'rooted in the imperative need for confidence and trust.'" *Jaffee*, 518 U.S. at 10, 116 S.Ct. at 1928.

claims. *See id.* at 1169; *see also Black-man*, 72 F.3d at 1423.

In *Jaffee*, the United States Supreme Court discussed how state law interacts with federal privilege law. The *Jaffee* Court stated that "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." *Jaffee*, 518 U.S. at 12–13, 116 S.Ct. at 1929–30. The *Jaffee* Court further explained that "any State's promise of confidentiality would have little value if the patient were aware that the privilege would not be honored in a federal court." *Id.* at 13, 116 S.Ct. at 1930. Thus, in announcing the existence of a federal p sychotherapist/patient privilege and a licensed social worker/client privilege, the United States Supreme Court relied, at least in part, on an evaluation of the law of the states. *See id.*

In enacting Fed.R.Evid. 501 (the federal law of privileges), the Advisory Committee, stressed that federal common law, and not the law of the states, governs federal privilege law. The Advisory Committee stated:

> In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law. As Justice Jackson has said:
>
> > A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.
>
> *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 471, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision

(even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply. See Charles A. Wright, Federal Courts 251–252 (2d ed.1970); *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *De Sylva v. Ballentine*, 351 U.S. 570, 581, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); 9 Charles A. Wright & Arthur R. Miller, Federal Rules and Procedure § 2408.

Fed.R.Evid. 501 advisory committee's note.

Thus, the Court may look to state law to fill in gaps in federal common law, but state law cannot supply the rule of decision. Further, if the Court were to adopt a state's law of privilege, it becomes a matter of federal common law.

Therefore, because this action involves a federal question, federal privilege law governs and the parties' discussion of state privilege law is only applicable in so far as state law can be used as a guide to federal privilege law.

## C. Application of the Psychotherapist/Patient Privilege to the Sessions Between Dr. Mathews and Johnson

The Court must now address whether the psychotherapist/patient privilege applies to the counseling sessions between Dr. Mathews and Johnson, given that Dr. Mathews was not a licensed psychologist at the time the sessions occurred.

### 1. Dr. Mathews' Qualifications at the Time She Counseled Johnson

 Dr. Mathews was a licensed MFCC at the time she counseled Johnson. It was not until four years after counseling Johnson that she became a licensed clinical psychologist. Thus, this Court must examine whether Dr. Mathews was qualified to engage in critical intervention/posttraumatic stress counseling in early April 1993 when she counseled Johnson after the shooting.

### a. MFCC License

When she counseled Johnson, Dr. Mathews was not a licensed psychologist or social worker. While it is not clear whether, as Johnson urges, the psychotherapist/patient privilege extends to MFCC/client communications,[5] the Court need not make that determination because it concludes that Dr. Mathews was not acting within the scope of her MFCC license when she counseled Johnson.

MFCCs are limited in the scope of their practice. Cal.Bus. & Prof.Code § 4980.02 provides:

> ... the practice of marriage, family, and child counseling shall mean that service performed with individuals, couples, or groups wherein interpersonal relationships are examined for the purpose of achieving more adequate, satisfying, and productive marriage and family adjustments.

The Office of the California Attorney General has opined as to what type of counseling falls within the scope of the MFCC license:

> Marriage, family and child counselors have the statutory authority to construct, administer and interpret 'psychological tests' but to do so only within the course of their practice, when within their field or fields of competence as established by education, training, and experience, and when such could and would be used to examine an interpersonal relationship between spouses or members of a family for the purpose of achieving more adequate, satisfying and productive marriage and family adjustments.

67 Op. Att'y Gen. 278 (1984).

The Office of the Attorney General has further stated that MFCCs are prevented "from doing work of a psychological nature consistent with the laws governing their respective professions ... or [to] state or imply that they are licensed to practice psychology ..." *Id.*

Johnson claims that Dr. Mathews acted within the scope of her MFCC license in that during critical incident/posttraumatic stress counseling sessions with law enforcement officers after a shooting, Dr. Mathews talked about the families of the officers. Johnson further asserts that Dr. Mathews acted within the scope of her MFCC license when during those sessions, she discussed with the officers their "work family."[6] The Court finds these arguments unpersuasive.

The Court does not believe that simply discussing family members in the course of a critical incident/posttraumatic stress counseling session causes the entire session to come within the scope of Dr. Mathews' MFCC license. The focus of the session is not on interpersonal family relationships for the purpose of accomplishing a more adequate, satisfying and

---

5. The Court notes that the Supreme Court and the Ninth Circuit have never recognized a privilege for an MFCC/client. However, at least one federal court has found that an MFCC/client privilege of some kind should exist. *See Ziemann v. Burlington County Bridge Commission, et al.,* 155 F.R.D. 497 (D.N.J.1994).

In *Ziemann,* the plaintiff brought a claim for sexual harassment against her employer. Seeking to prove that plaintiff's subsequent depression stemmed from her rocky marriage, and not from sexual harassment on the job, the defendant sought disclosure of plaintiff's marriage counseling records. In ruling that plaintiff would be compelled to disclose the marriage counseling records, the court found that a limited marriage counselor privilege existed. *See id.* at 506. The court stated:

"While this court is not prepared to recognize the marriage counselor privilege as a matter of federal common law, it should, however, receive protection as an outgrowth of the psychotherapist/patient privilege." *Id.*

The Court finds that in the instant case it need not address whether the federal psychotherapist/patient privilege should be extended to MFCCs, because the Court finds, as discussed below, that Dr. Mathews was not acting within the scope of her MFCC license in counseling Johnson.

6. Johnson does not define the "work family," but based on Dr. Mathews' deposition testimony it appears to encompass law enforcement officers with whom the officer closely works.

productive marriage and family adjustments, *see* Cal.Bus. & Prof.Code § 4980.02, but on the officer's possible posttraumatic stress. Further, it is the Court's view that the "work family" does not come within the definition of "family" in the context of an MFCC license. Thus, the Court concludes that Dr. Mathews was acting outside the scope of her MFCC license during her critical incident/posttraumatic stress counseling sessions with Johnson in April 1993.

### b. Psychological Assistant

Johnson contends that even if Dr. Mathews was not acting within scope of her MFCC license in the subject sessions with Johnson, she was authorized to engage in critical incident/posttraumatic stress counseling in her capacity as a psychological assistant to Dr. Lawrence E. Davis ("Dr. Davis"). While it is unclear whether the psychotherapist/patient privilege extends to psychological assistants, the Court need not reach this issue because the Court finds, as discussed below, that there is contradictory evidence regarding whether Dr. Mathews was a psychological assistant to Dr. Davis. Johnson has not carried his burden of proof to establish that Dr. Mathews was acting as a psychological assistant during their communications in April 1993.

To support his contention that Dr. Mathews was a psychological assistant to Dr. Davis, Johnson submitted the following evidence: 1) a declaration from Dr. Mathews stating that she was Dr. Davis' psychological assistant and that Dr. Davis supervised all of her work; 2) her application to the Board of Medical Quality Assurance, Psychology Examining Committee ("Board"), requesting that she be allowed to be a psychological assistant to Dr. Davis, and the Board's approval noted thereon; 3) a check to the Board for a renewal of the application for the 1993 year; and 4) an annual report by Dr. Mathews to the Board covering the period from February 1, 1993 to January 31, 1994 explaining her supervision by Dr. Davis.

Plaintiffs respond that Dr. Mathews did not meet all of the qualifications and requirements of a psychological assistant. They contend that: 1) Dr. Mathews was an independent contractor with Dr. Davis, not his employee, as required by state law for psychological assistants; 2) Dr. Davis failed to comply with the notice requirements for a psychological assistant under state law; and 3) Dr. Davis did not adequately supervise Dr. Mathews as a psychological assistant. The Court will address each of these contentions in turn.

First, Dr. Mathews has testified in her deposition that she was an independent contractor for the Counseling Team, not an employee. Dr. Davis was associated with the Counseling Team. In defining who qualifies as a "psychological assistant," Cal.Bus. & Prof.Code § 2913 provides: "A person other than a licensed psychologist may be *employed* by a licensed psychologist, ..." (emphasis added). Hence, the Cal.Bus. & Prof.Code suggests that an employer-employee relationship between the psychologist and his/her assistant may be required for the assistant to be an assistant psychologist. However, absent further legal authority on this issue, the Court is unable to conclude as a matter of law that Dr. Mathews' status as a independent contractor for the Counseling Team precluded her from being a psychological assistant.

Second, Plaintiffs note that Johnson has provided no evidence that Dr. Davis complied with the notice requirements for psychological assistants as required by the California Code of Regulations ("CCR"). CCR, Title 16, § 1391.6(b) states: "The supervisor shall inform each client or patient in writing prior to the rendering of services by the psychological assistant that the assistant is unlicensed and is under the direction and supervision of the supervisor as an employee." Indeed, Johnson has not provided any evidence that Dr. Davis complied with the notice requirements.

In the instant case, Dr. Mathews testified in her deposition that she gave Johnson a business card, which stated that she was an MFCC. Four and one half months

**1112**

later, on August 4, 1999, Dr. Mathews signed a declaration stating that on April 4, 1993 she gave Johnson her business card which identified her both as an MFCC and as a psychological assistant and stated her psychological assistant number. In her later declaration, Dr. Mathews does not state that she told Johnson that she was counseling him in her capacity as a psychological assistant to Dr. Davis. Finally, from the deposition testimony of Johnson, it is clear that he was not aware that Dr. Mathews was a psychological assistant. Johnson testified that he was not sure what Dr. Mathews' qualifications were, but that Dr. Mathews gave him a business card. The foregoing strongly indicates that during the April 1993 counseling sessions Dr. Mathews was not acting as a psychological assistant.

Finally, Plaintiffs contend that Dr. Mathews was not adequately supervised by Dr. Davis, as required by CCR § 1391.5(a), which states:

A psychological assistant shall be under the direction and supervision of a licensed psychologist or board-certified psychiatrist who is rendering professional services in the same work setting at the same time as the psychological assistant is rendering professional services at least fifty percent (50%) of the time professional services are being rendered by the psychological assistant.

While Johnson has submitted a declaration from Dr. Mathews stating that Dr. Davis supervised her work, Dr. Mathews has testified in her deposition that she has conducted numerous critical incident/post-traumatic stress counseling sessions, and Dr. Davis did not attend any of those sessions. Thus, although Dr. Davis was not required to attend those sessions, his lack of presence creates a serious question whether Dr. Davis supervised Dr. Mathews fifty percent of the time during the period when she conducted those sessions.

Accordingly, the Court concludes from all the evidence presented on this issue that Johnson has not adequately demonstrated that Dr. Mathews was acting as a psychological assistant when she counseled Johnson in April 1993.

**2. Reasonable, But Mistaken, Belief that a Mental Health Counselor is a Psychologist or Licensed Social Worker**

█ Even if Dr. Mathews was not acting within the scope of her MFCC license in counseling Johnson, or was not acting as a psychological assistant at that time, Johnson may still invoke the psychotherapist/patient privilege if he reasonably believed that Dr. Mathews was a psychologist or a licensed social worker (collectively, "psychotherapist"). Although there is scant case law addressing whether a client may invoke the psychotherapist/patient privilege if he or she reasonably, but mistakenly, believes that the person he or she confided in was a psychotherapist, the case law is somewhat more established in the area of the reasonable, but mistaken, belief by a client as to whether her/his confidant is an attorney.

The issue has not arisen with great frequency,[7] but several courts and treatises have stated that where a client reasonably believed that her/his confidential communication was with an attorney, the attorney/client privilege still applies. The seminal case on the issue is *United States v. Boffa*, 513 F.Supp. 517 (D.Del.1981). In *Boffa*, the defendant asserted the attorney/client privilege even though his putative "attorney" was not a member of any bar. The court held:

... the rationale behind the privilege equally supports the theory that the privilege should be extended to those who make confidential communications to an individual in the genuine, but mis-

---

7. See *United States v. Tyler*, 745 F.Supp. 423, 425 (W.D.Mich.1990) ("[T]here is scant case law on the question of whether an attorney/client privilege applies when the defen- dant erroneously believes that he or she is consulting with an attorney, but the person who is being consulted is not licensed to practice law.")

taken, belief that he is an attorney.... Prudence dictates that such a belief should be reasonable in order to lay claim to the protections of the privilege and that a 'respectable degree of precaution' in engaging the services of the 'attorney' must be demonstrated.... Where such a belief is proved, however, the client should not be compelled to bear the risk of his 'attorney's' deception and he should be entitled to the benefits of the privilege as long as his bona fide belief in his counsel's status is maintained.

*Id.* at 523. (citations omitted).

Several other courts in various jurisdictions have likewise concluded that the attorney/client privilege applies when the client reasonably believes that her or his confidential communications are with a licensed attorney. In *Tyler,* the defendant moved to preclude the admission of correspondence between him and his former cell-mate, whom the defendant believed was an attorney. The defendant's former cell-mate held himself out as an attorney to the defendant and others, posted a legal diploma on his cell wall, assisted prisoners in all types of legal matters, and was addressed by fellow prisoners as "counselor." *Tyler,* 745 F.Supp. at 425. The court found that the privilege should apply because the former cell-mate "held himself out as an attorney to [the defendant] and others, and [the defendant] genuinely and reasonably believed that [his former cellmate] was an attorney. Pursuant to his belief, [defendant] made confidential communications to [his former cell-mate] seeking legal advice and opinions." *Id.* at 426. *See also In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 923 (8th Cir. 1997) (recognizing that "courts have found the privilege applicable where the client reasonably believed that a poseur was in fact a lawyer, reasonably believed that a lawyer represented the client rather than

another party, or reasonably believed that a conversation with a lawyer was confidential ..."); *United States v. Rivera,* 837 F.Supp. 565, 567 n. 1 (S.D.N.Y.1993) ("It is common ground among the parties that the attorney/client privilege attaches to confidential communications made to an individual in the genuine, but mistaken, belief that he is an attorney.") (citations omitted); *United States v. Mullen & Co.,* 776 F.Supp. 620, 621 (D.Mass.1991) (holding attorney/client privilege applies in confidential communication made to an accountant where the client was under the reasonable, but mistaken, belief that the accountant was an attorney).

In addition to case law, several treatises have also stated that the attorney/client privilege applies when the client believes the putative attorney is in fact a licensed lawyer. *See e.g.,* Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure: Evidence § 5481 (stating, in a section entitled, "Quasi–Lawyer," that "a person who is not authorized to practice law may still qualify as a 'lawyer' for purposes of the attorney/client privilege if the putative client 'reasonably believed' that the person was authorized to practice."); *see also* 8 Wigmore, Evidence § 2302 (McNaughton rev., 1940) (stating that the privilege should apply where the client reasonably but mistakenly thought that she was dealing with a lawyer).

California courts have also applied the privilege where the client reasonably thought that his/her confidant was an attorney. "The modern trend is to extend the privilege beyond the strict attorney/client relationship in cases where the client is deceived as to the attorney's lack of professional status. Thus, Ev. C. 950 defines 'lawyer' to include a person 'reasonably believed by the client' to be authorized to practice law in any state or nation." Witkin, Cal.Evid. (3d ed.1986), § 1111 (citations omitted).[8]

8. California law also allows for the application of the physician/patient privilege where the patient reasonably, but mistakenly, believes that the putative physician was a licensed practitioner.

Cal.Evid.Code § 990 defines "physician" as follows: "As used in this article, 'physician' means a person authorized, or reasonably believed by the patient to be authorized, to practice medicine in any state or nation." In

As noted above, there is little law[9] on whether the psychotherapist/patient privilege applies when the patient reasonably, but mistakenly, believes that the putative psychotherapist was a licensed practitioner. In fact, this Court found no federal cases in which a court applied a federal, rather than a state, "quasi-therapist"/patient privilege where the patient reasonably, but mistakenly, believed that he or she was talking to a licensed psychotherapist.

However, some treatises on federal law have commented on such a situation. In their treatise on the Federal Rules of Evidence, Wright and Graham urge that a "quasi-therapist"/patient privilege should exist where the patient reasonably, but mistakenly, thought that she or he was being treated by a psychotherapist. The treatise states: "Even if the professional is not 'authorized to practice medicine,' he or she can still qualify as a 'psychotherapist' ... if 'reasonably believed by the patient' to be authorized." Charles A. Wright & Kenneth W. Graham, at § 5527. They further note that "[t]he 'reasonable belief' standard ... is the same as the one provided for 'quasi-lawyers' ... and will undoubtedly be similarly construed." *Id.*

California has also recognized a "quasi-therapist"/patient privilege. Cal.Evid. Code § 1010 defines "psychotherapist" to include: "A person authorized, or *reasonably believed by the patient to be authorized*, to practice medicine in any state or nation who devotes, or is reasonably believed by the patient to devote, a substantial portion of his or her time to the practice of psychiatry." Cal.Evid.Code § 1010(a) (emphasis added).

Both Wright and Graham and the California Evidence Code discuss the "quasi-therapist"/patient privilege only in the context of psychiatry and the practice of medicine. However, the United States Su-

preme Court in *Jaffee* made it clear that the same psychotherapist/patient privilege that applies to psychiatrists also extends to psychologists and licensed social workers. Thus, the rationale that would allow the "quasi-therapist"/patient privilege to apply when the patient believed he was being treated by a psychiatrist should also apply when the patient believed he was being treated by a psychologist or a licensed social worker. Based on the foregoing discussion, this Court concludes that the psychotherapist/patient privilege applies when the patient reasonably, but mistakenly, believes that he or she was being counseled by a licensed psychologist or social worker.

■ In the instant case, Johnson stated in his deposition that although he was not sure as to Dr. Mathews' "specific credentials," he believed she was a psychologist or psychiatrist. During his deposition, he continuously referred to Dr. Mathews as a "psychologist." In response to a deposition question asking him if he knew whether Dr. Mathews was "a psychologist or a psychiatrist or what the credentials were of this female psychologist-type person," Johnson answered: "She's one or the other. I'm not sure which she was. I didn't see any certificates." Johnson further stated in a March 25, 1999 declaration:

> 2. That shortly after the shooting I had the opportunity to, and wanted to, meet with the psychologist (I am not sure as to specific credentials). I met with her alone in a room in the Chino Hills station with the door closed. It was my understanding and belief that my communications with her would be confidential.

> 3. That approximately three days later, I again met with the same psychologist (I am not sure as to her specific credentials) at her office. I met with

---

the law revision commission comment to § 990, the commission states that the privilege "should protect the patient from reasonable mistakes as to unlicensed practitioners." Cal.Evid.Code § 990.

9. *See* Wright & Graham, Federal Practice and Procedure: Evidence § 5527 (noting that "the caselaw is sparse" on the application of the psychotherapist/patient privilege to quasi-therapists).

her alone in her office with the door closed. It was my understanding and belief that my communications with her would be confidential....

. . .

5. That before I met with the psychologist I was told by a representative of the San Bernardino County Sheriff's Department that my communication with the psychologist would be entirely confidential.

Thus, while Johnson did not know what Dr. Mathews' "specific credentials" were, he believed that she was either a psychologist or a psychiatrist, and that his communication with her would be confidential. Johnson's belief that Dr. Mathews was a licensed psychotherapist of some kind was reasonable given that: 1) Dr. Mathews had been hired by the county as a mental health counselor to conduct counseling sessions with officers involved in shooting incidents; 2) Johnson knew that "psychologists" were typically employed to conduct these counseling sessions; and 3) Johnson was told that his meeting with "psychologist" Dr. Mathews would be confidential. Therefore, the Court concludes that a "quasi-therapist"/patient privilege protects the communications between Johnson and Dr. Mathews during their counseling sessions because Johnson reasonably, but mistakenly, believed that Dr. Mathews was a psychotherapist at the time he met with her.

### 3. Diagnosis or Treatment Requirement

Plaintiffs argue that Johnson's sessions with Dr. Mathews were not for the purpose of diagnosis or treatment, and were therefore not subject to the psychotherapist/patient privilege. In *Jaffee*, the

United States Supreme Court stated that the psychotherapist/patient privilege applies to "confidential communications between a licensed psychotherapist and her patients *in the course of diagnosis or treatment.*" *Jaffee*, 518 U.S. at 15, 116 S.Ct. at 1931 (emphasis added). Plaintiffs point to the Sheriff's Department Manual, which requires officers who have been involved in a shooting incident to talk to a departmental psychologist.[10] Plaintiffs urge that because it was mandatory under departmental policy for Johnson to see a departmental psychologist, his communication with Dr. Mathews was not for diagnosis or treatment, and therefore should not be subject to the psychotherapist/patient privilege.

To support their argument, Plaintiffs point to *Kamper v. Gray*, 182 F.R.D. 597 (E.D.Mo.1998). In *Kamper*, the court found that the psychotherapist/patient privilege did not apply when: 1) the police department had a mandatory policy that officers involved in shootings talk to a counselor, and 2) the officer knew that the counselor would report his finding to the police department. Plaintiffs argue that *Kamper* stands for the proposition that the psychotherapist/patient privilege does not apply when police officers talk to a counselor pursuant to a mandatory departmental policy. They assert that when an officer talks to a counselor pursuant to a mandatory policy, the purpose of the conversation is not for diagnosis or treatment. This Court does not agree with Plaintiff's reading of *Kamper*. As discussed more fully below, the *Kamper* court's finding that the psychotherapist/patient privilege did not apply turned on the fact that the officer knew that the counselor's report would go to his employer. Thus, the *Kam-*

---

**10.** San Bernardino Sheriff's Department Manual § 751.16 provides:

**Departmental Psychologist:** Often, following a shooting incident, personnel who have fatally shot or wounded someone suffer severe emotional impact. The impact varies with each individual and is completely unpredictable. In some cases, there is no change in the individual; and in others, it may occur immediately, several hours or days later. It shall be the responsibility of the Civil Liabilities Division member to arrange as soon as possible a meeting between the departmental psychologist and deputies who have gravely wounded or killed someone. These arrangements shall be made no later than the first business day following the incident, or sooner if necessary.

*per* court found that the communication between the officer and the psychotherapist was not confidential and therefore not subject to the privilege. The *Kamper* court did not rely on the fact that the session was mandatory, nor did it hold that such mandatory counseling sessions were not for the purposes of diagnosis or treatment, and therefore, the psychotherapist/patient privilege was not applicable.

Further, it is not readily ascertainable whether the defendant Village of Hoffman Estates in *Jaffee* had a mandatory policy in place whereby officers involved in a shooting must talk to a counselor, or if the Village of Hoffman Estates merely employed a counselor for officers to talk to if they so desired. However, it is clear that the *Jaffee* court stressed the importance of making counseling available to police officers after traumatic experiences. *See Jaffee*, 518 U.S. at 11, n. 10, 116 S.Ct. at 1929, n. 10. Further, the *Jaffee* court's opinion never indicated that a mandatory counseling session would not be subject to the p sychotherapist/patient privilege.

In the instant case, Johnson did testify at his deposition that he wanted to meet with and talk to Dr. Mathews, and that he thought that the communications he had with her were confidential. A reasonable inference from this evidence is that Johnson wished to meet with Dr. Mathews for counseling or therapy. Further, Dr. Mathews testified at her deposition that it is her custom and practice during critical incident interventions to talk to the officer about symptom reduction and future symptom prevention. During the crisis intervention counseling session with Johnson, Dr. Mathews engaged in treatment when she advised Johnson of various coping skills to handle his psychological stress and reduce the symptoms of such stress. Thus, the Court determines that the communication between Johnson and Dr. Mathews in April 1993 involved treatment, and was therefore subject to the psychotherapist/patient privilege.

### 4. County Policy Mandating Johnson Meet with a Mental Health Counselor

Similarly, Plaintiffs contend that the County of San Bernardino's mandatory policy that all officers involved in shootings must meet with a mental health counselor renders the privilege inapplicable because the mandatory nature of the counseling session renders the communication non-confidential. Plaintiffs again rely on *Kamper*. In *Kamper*, the plaintiffs brought an action against two police officers who had been involved in a shooting incident with the plaintiffs. As part of his employment with the county, one of the defendant police officers had been given psychological evaluations both before and after the shooting. The defendant police officer knew that these evaluations would be given to his employer. The plaintiffs sought discovery of the records of the psychotherapist regarding these evaluations. In finding that the plaintiffs were entitled to the evaluations, the court decided that because the defendant officer knew that the evaluations would go to his employer, his communications with the psychotherapists were not confidential. *See* 182 F.R.D. at 598–99. Because there were no confidential communications, the court found that the psychotherapist/patient privilege did not apply. *Id.* at 599.

Similarly, in *Barrett v. Vojtas*, 182 F.R.D. 177 (W.D.Pa.1998), the plaintiffs brought a civil rights action against a police officer. There, the police officer had been ordered by his employer to get counseling following the shooting incident that gave rise to the action. He did so. The psychiatrist and the psychologist were ordered by the officer's employer to provide a copy of their reports to the police department. While the police officer knew that the reports of his psychotherapists would be given to his employer, he maintained that he believed that his communications with the psychotherapists were confidential as to other persons. The court determined that the psychothera-

pist/patient privilege did not apply to the counseling sessions because the communications therein were not confidential because the doctors were ordered to submit their reports to the police department. *See* 182 F.R.D. at 179. "[C]ommunications that are intended to be disclosed to third parties are generally not protected by a testimonial privilege" because "[t]here would be no reasonable expectation of confidentiality." *Id.*

The present case is readily distinguishable from both the *Kamper* and the *Barrett* cases. Unlike those cases, Johnson was told by his employer that his communication with the mental health counselor would be confidential. Further, the County of San Bernardino did not receive a copy of Dr. Mathews' report of the April 1993 counseling sessions. Johnson had a clear expectation of confidentiality regarding his conversations with Dr. Mathews in April 1993.

Public policy also supports the application of the privilege to Johnson's communications with Dr. Mathews. In *Jaffee,* the Supreme Court emphasized the importance of confidentiality to encourage full and frank communication between psychotherapists and their patients. *See* 518 U.S. at 10, 116 S.Ct. at 1928. The Court also specifically referred to the need for police officers to be able to have confidential mental health counseling sessions after traumatic events. The Supreme Court stated:

> Police officers engaged in the dangerous and difficult tasks associated with protecting the safety of our communities not only confront the risk of physical harm but also face stressful circumstances that may give rise to anxiety, depression, fear, or anger. The entire community may suffer if police officers are not able to receive effective counseling and treatment after traumatic incidents, either because trained officers leave the profession prematurely or because those in need of treatment remain on the job.

518 U.S. at 11, 116 S.Ct. at 1929.

The *Barrett* court likewise recognized the importance of allowing police officers to undergo therapy and stated that even if a police department required that the officers seek counseling, that communication may be protected by the privilege. *See Barrett,* 182 F.R.D. at 181 ("... there could be situations giving rise to the privilege when an officer has been ordered to undergo therapy. Certainly, some officers who would otherwise benefit from counseling after a traumatic event, may be reluctant to seek it in the absence of an order to do so.") Thus, a public purpose clearly supports the need for a policy like the one the San Bernardino County Sheriff's Department had in place in April 1993, and such counseling sessions should be construed as confidential communications protected by the psychotherapist/patient privilege.

Accordingly, for the reasons stated earlier, this Court concludes that the psychotherapist/patient privilege applies to the communications between Dr. Mathews and Johnson during their counseling sessions on April 4 and 7, 1993, except for one portion which was waived by Johnson, as discussed below.

**D. Johnson Waived the Psychotherapist/Patient Privilege as to Perception Distortion Only**

Having determined that the psychotherapist/patient privilege applies to the communications between Johnson and Dr. Mathews on April 4 and 7, 1993, the Court next turns to the question of whether Johnson waived the privilege as to any portion of the communications.

■ A party may waive a privilege when that party's claims put privileged information at issue. *See Home Indem. Corp. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1326 (9th Cir.1995) (applying rule to attorney/client privilege). *Jaffee* also recognized that the psychotherapist/patient privilege can be waived, but did not elaborate on how and when such a

waiver could occur. *See* 518 U.S. at 18, 116 S.Ct. at 1932.

### 1. Waiver as to Perception Distortion

 This Court has already adjudicated that Johnson waived the psychotherapist/patient privilege as to his medical records regarding the question of perception distortion. In an October 15, 1997 order, in determining that Plaintiffs were entitled to discovery regarding Kaiser Permanente Hospital's records of psychological/psychiatric complaints by Johnson, and the examination and treatment of Johnson, the Court stated:

> Johnson has put his mental state regarding perception distortion before and at the time of the shooting at issue by testifying that his perception of the incident was distorted, and submitting the report of an expert that the distortion resulted from the trauma of the incident. He, therefore, has waived his federal psychotherapist/patient privilege as to these records.

Johnson has not persuaded the Court by his papers filed in relation to this motion to reconsider its prior order. Thus, the Court concludes that Johnson has waived the invocation of a psychotherapist/patient privilege as to any communications between him and Dr. Mathews on the subject of perception distortion before and at the time of the shooting.

### 2. Waiver as to All Other Communications

The Court now must consider whether Johnson waived the psychotherapist/patient privilege as to subjects other than perception distortion which he and Dr. Mathews talked about in the subject counseling sessions.

Since the psychotherapist/patient privilege was first delineated in *Jaffee*, two lines of cases have emerged addressing the circumstances in which the privilege has been waived. "The first line of cases takes a broad view, finding waiver where the court concludes that the patient/litigant has placed his or her mental or emotional condition 'at issue.'" *Fritsch v. City of Chula Vista,* 187 F.R.D. 614, 621 (S.D.Cal. 1999). "The other line of cases takes a significantly narrower view, finding waiver only where the privileged communications themselves are put in issue by the patient/litigant." *Id.*

#### a. Cases Adopting the Broader View of Waiver

While neither the Ninth Circuit, nor this court has confronted the issue of when a patient waives his or her psychotherapist/patient privilege, the majority of the courts which have done so have adopted a broad interpretation of waiver. Those courts have held that by placing his/her mental state at issue, even through a claim in the pleadings of damages for emotional distress, the patient/litigant at that point waives his/her psychotherapist/patient privilege as to all communications between him/her and the psychotherapist on the mental state which will be an issue in the litigation.

In *Sarko v. Penn–Del Directory Co.,* 170 F.R.D. 127 (E.D.Pa.1997), the court found that the patient/litigant waives her psychotherapist/patient privilege by placing the issue of her emotional or mental health at issue in her pleadings. *See id.* at 130. In *Sarko,* the plaintiff was a former employee of the defendant, who brought a claim under the Americans with Disabilities Act ("the ADA") alleging that she suffered from depression and that the defendant failed to reasonably accommodate her. The court found that by placing her depression at issue, the plaintiff waived her psychotherapist/patient privilege. *See id.*

Similarly, in *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.,* 967 F.Supp. 346 (C.D.Ill.1997), the plaintiff filed a claim for sexual harassment against her former employer. The plaintiff placed her psychotherapist on the expert witness list that she submitted to the court, and stated that her therapist would testify as to the plaintiff's reactions to the events

which gave rise to the action. *See id.* at 348. The court found that under these circumstances, plaintiff had waived her psychotherapist/patient privilege "by placing her mental condition in issue and by disclosing [her therapist] as an expert witness who will give opinion testimony at trial." *Id.* at 349–50; *see also, e.g. Equal Employment Opportunity Comm'n v. Danka Indus.*, 990 F.Supp. 1138, 1141–42 (E.D.Mo. 1997); *Topol v. Trustees of Univ. of Pennsylvania*, 160 F.R.D. 476, 477 (E.D.Pa. 1995).

### b. Cases Adopting the Narrower View of Waiver

While still the minority, a growing number of courts have adopted a narrower interpretation of when a patient waives the psychotherapist/patient privilege. Those courts have held that for a patient/litigant to waive his/her psychotherapist/patient privilege, the patient must directly place the privileged communication at issue, not by simply alleging in a complaint that the plaintiff is claiming damages for emotional distress.

The first case to clearly adopt this view of the scope of waiver was *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.Mass.1997). There, the plaintiff claimed that she and another female administrative assistant has been discriminated against when the defendant city refused to raise their salaries to that of a male administrative assistant. The plaintiff sought emotional distress damages in six of her eight claims. *See id.* at 226. The defendant sought to compel plaintiff to produce her psychiatric and psychotherapeutic records, claiming plaintiff had waived the psychotherapist/patient privilege by seeking emotional distress damages. In deciding that the records should not be produced, the *Vanderbilt* court ruled that the psychotherapist/patient privilege is waived only when the patient either calls his or her therapist as a witness, or introduces the substance of the privileged communication into evidence. *See id.* at 228.

Several other courts have adopted the *Vanderbilt* court's view. *See, e.g. Booker v.* *City of Boston,* 1999 WL 734644, *1 (D.Mass.1999) (describing the two lines of authority on waiver, and finding "more persuasive the line of cases which holds that the privilege is not waived unless the plaintiff makes positive use of the privileged material in the prosecution of her case.")

Recently, the Southern District of California also adopted the *Vanderbilt* court's narrower interpretation of waiver. In *Fritsch v. City of Chula Vista,* 187 F.R.D. at 614, the plaintiff, a former assistant city attorney who was terminated for refusing to submit to a psychiatric evaluation, brought a lawsuit against her former employer for employment discrimination and retaliation under the ADA. The defendants moved to compel plaintiff to disclose all of the documents from her various psychotherapists, and the plaintiff moved for a protective order. The defendants claimed that the plaintiff waived the psychotherapist/patient privilege because she placed her mental state at issue by claiming damages for emotional distress. The *Fritsch* court did a thorough analysis of the two lines of authority as to when the psychotherapist/patient privilege is waived, and determined that the narrower approach to waiver, as described by the court in *Vanderbilt,* was "better reasoned, involve[d] a clearer application, and [is] truer to the spirit and intent of the Supreme Court's opinions in both *Jaffee* and *Upjohn.*" *Id.* at 630. Thus, the court found that the plaintiff had not waived the psychotherapist/patient privilege by seeking damages for emotional distress.

 This Court need not determine which line of authority on waiver applies to the facts of this case, because in applying either line of authority, the Court will arrive at the same result. Under either analysis, the Court finds that Johnson waived his psychotherapist/patient privilege as to perception distortion, but not as to any other subject that he may have discussed with Dr. Mathews.

As Johnson notes, the majority of the cases addressing the issue of waiver of the psychotherapist/patient privilege involve a waiver by the plaintiff, and not by a defendant. However, the analysis of a waiver by a defendant and by a plaintiff is similar. Just as courts examine whether a plaintiff waived his/her privilege by placing his/her mental state at issue, or by placing the communication at issue, in determining whether a defendant waived a privilege, the court must decide whether the defendant placed his/her mental state at issue by raising his/her mental state as a defense, or by placing the communication at issue in establishing a defense.

Here, Johnson has asserted perception distortion as a possible defense both by testifying to his distorted perception in his deposition and by submitting the report of an expert witness on his perception distortion. Thus, as discussed above, Johnson has waived the psychotherapist/patient privilege as to the issue of perception distortion. However, Johnson has not asserted any other defense that puts at issue his mental state before or at the time of the shooting. Further, Johnson has not indicated that he intends to introduce any other evidence of his mental state or evidence implicating any other topic he may have discussed with Dr. Mathews during the April 4 and 7, 1993 counseling sessions.

Applying these facts to the narrow view of waiver described in *Vanderbilt* and *Fritsch,* because Johnson will not affirmatively introduce evidence about his mental state that would place his communications with Dr. Mathews at issue, other than his perception distortion, he has not waived his psychotherapist/patient privilege. Under the broader view of waiver, Johnson also has not waived his psychotherapist/patient privilege on any issue other than perception distortion, because Johnson has not alleged any facts causing his mental state to be at issue.

Thus, while Johnson has waived his psychotherapist/patient privilege as to perception distortion, he has not waived the privilege on any other subject matters he and

Dr. Mathews discussed. Therefore, the court concludes that Johnson may invoke the psychotherapist/patient privilege as to all communications between him and Dr. Mathews on April 4 and 7, 1993, except to the extent those communications relate to the issue of perception distortion. Further, the Court will preclude Plaintiffs from seeking to introduce evidence of those above mentioned communications which are protected by the psychotherapist/patient privilege and as to which the privilege has not been waived.

### E. Dr. Mathews Billing Statement—Exhibit 4A for Identification

 At the June 11, 1999 deposition of Dr. Mathews, a document referred to as "a Billing Statement by Dr. Mathews to the Counseling Team regarding Dr. Mathews' debriefing sessions of San Bernardino County Sheriffs on April 4, 1993" was marked for identification as Exhibit 4A and ordered to be sealed by the Court Clerk because Johnson asserted the psychotherapist/patient privilege as to the disclosure of it and its contents. The Court advised counsel that after it had decided the instant motion, it would then determine if Exhibit 4A was protected by the psychotherapist/patient privilege.

The Court has reviewed Exhibit 4A and concludes that it does not directly or indirectly refer to any confidential communications between Johnson and Dr. Mathews during the April 4 and 7, 1993 crisis intervention sessions. Therefore, the Court admits Exhibit 4A into evidence as part of the June 11, 1999 deposition proceedings at which Dr. Mathews was the deponent.

The Court will order the Court Clerk to send a copy of Exhibit 4A to counsel for all parties.

### III.

### *DISPOSITION*

IT IS ORDERED THAT:

1) Johnson's motion to exclude as evidence at trial certain communications between him and Dr. Bonnie Mathews as protected

by the psychotherapist/patient privilege is granted. The psychotherapist/patient privilege applies to the non-waived communications between Johnson and Dr. Mathews during the critical incident/post-traumatic stress counseling sessions that occurred on April 4, 1993 and April 7, 1993.

2) Johnson's motion to exclude evidence at trial is denied as to any discussions he had with Dr. Mathews regarding his perception distortion before and at the time of the shooting because he has waived the psychotherapist/patient privilege as to those discussions.

3) Exhibit 4A: Dr. Mathews Billing Statement is admitted into evidence as part of her deposition proceedings on June 11, 1999, and the Clerk shall send a copy of the statement to counsel for all parties.

4) Plaintiffs' request to allocate to Johnson the cost of the reporter's transcript for the March 19, 1999 and June 11, 1999 depositions of Dr. Mathews is denied.